# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, | Case No. 1:09-cv-522-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| v. | **(1) Defendant's Motion for Summary Judgment (Dkt. No. 32);** |
| ORCHARDS AT FAIRVIEW CONDOMINIUM ASSOCIATION, INC., and WINDERMERE REAL ESTATE/CAPITAL GROUP, INC., | **(2) Plaintiff's Motion for Summary Judgment (Dkt. No. 54);** |
| Defendants. | **(3) Plaintiff's Motion to Compel Discovery (Dkt. No. 61);** |
| | **(4) Defendant's Motion for Leave to File Post Hearing Supplemental Affidavit (Dkt. No. 80)** |

## INTRODUCTION

Intermountain Fair Housing Council ("IFHC") instituted this action against

Orchards at Fairview Condominium Association, Inc. ("the Association") and

Windermere Real Estate/Capital Group, Inc. ("Windermere"), alleging that the Orchards

at Fairview Condominiums–which are managed by the Association and sold by

Windermere–discriminate on the basis of "familial status" and "handicap" in violation of

the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*  Specifically, IFHC claims the following

items violate the Fair Housing Act: (1) a sign at the entrance of the condominiums

containing the phrase "Active-Adult Condominium Communities"; (2) the condominium rules prohibiting unaccompanied minor children from using the community center and swimming pool; and (3) a restrictive covenant prohibiting the use of the condominiums as "group homes."

Before the Court are four motions, all of which are ripe at this time. IFHC and the Association have both filed motions for summary judgment. The Association moves for summary judgment on two grounds, arguing (1) IFHC's claims are barred by the statute of limitations, and (2) even assuming discrimination occurred, the Association is not the proper party because, as an owners association, it did not promulgate the allegedly discriminatory documents and has no control over the content of the offending items. IFHC moves for summary judgment on all of its claims against the Association, arguing that no issues of material fact exist and that it is entitled to judgment as a matter of law.[1]

The Court heard oral arguments on the parties' motions for summary judgment and IFHC's Motion to Compel (Dkt. No. 61) on December 9, 2010. Following the hearing, the Association filed a Motion for Leave to File Post Hearing Supplemental Affidavit

---

[1] The Court is hesitant to characterize the parties' motions as "cross-motions" for summary judgment. While the Association denies that any discrimination occurred, its motion for summary judgment is based on the statute of limitations and the theory that, even assuming discrimination did take place, the Association is not liable for the alleged discriminatory conduct. This is not the ordinary "cross-motion" situation in which the parties agree upon the facts but claim entitlement to judgment as a matter of law based on the substantive law governing the case.

(Dkt. No. 80) related to an issue that arose during oral argument on the parties' motions.[2]

Having carefully considered the papers submitted and oral arguments of counsel, for the

reasons discussed below the Court will deny both parties' motions for summary

judgment. IFHC's motion to compel and the Association's motion for leave also will be

addressed below.

## FACTS

In October 2005, Richard Mabbutt, the Executive Director of IFHC, claims he

viewed an article published in the *Idaho Statesman* describing the Orchards at Fairview

Condominiums[3] (hereinafter "condominiums" or "subject property") as an "empty nester"

community. See Verified Complaint and Demand for Jury Trial, ¶ 12 (Dkt. No. 1.)

Based on the article in the local paper, on December 6, 2005, Mr. Mabbutt met with

Michael Dixon. Mr. Dixon is the manager of the Orchards LLC, which manages the

Orchards at Fairview LLC. The Orchards at Fairview LLC is the owner/developer of the

subject property. Neither Mr. Dixon nor Orchards at Fairview LLC are defendants in this

case. Mr. Mabbutt claims that, during the meeting, he warned Mr. Dixon that the use of

the word "adult" in the advertising material for the condominiums would violate the Fair

Housing Act. Verified Complaint and Demand for Jury Trial, ¶ 15.

---

[2] The Association's motion for leave has been fully briefed and the Court finds that it can be resolved at this time without a hearing.

[3] The Orchards at Fairview Condominiums are also known as the McKinney Condominiums.

IFHC's complaint alleges that, in May of 2007, Mr. Mabbutt observed a sign at the subject property which described the property as an "active adult condominium community." *Id.*, at ¶ 16.  On or about May 16, 2007, an IFHC tester met with Mary Liese, an agent for Defendant Windermere, at the subject property in an attempt to purchase and/or rent a condominium.  Verified Compl., ¶ 17.  The complaint alleges that, during this meeting, Ms. Liese made discriminatory statements to the IFHC tester, such as "we prefer people 55 and over" and specifically pointed out that the complex does not have a playground. *Id.*

The IFHC tester also was provided with a document entitled "Commonly Asked Questions on Condominium Ownership," which describes the condominium rules, including restrictions on the use of the community center and swimming pool by children under 18 and an outright prohibition on swing sets in the common areas.  These rules arise from the Condominium Community Policies and Guidelines ("Guidelines").  The Guidelines provide that "[a]ll children under the age of 18 must be accompanied by an adult resident age 18 or older," and that "[c]hildren and teenage parties are prohibited" at the condominium community center. Aff. of Mike Keller, Exh. D, Community Policies and Guidelines (Dkt. No. 34.)  The Guidelines also prohibit the following items in the condominium common areas: "any type of yard sign, statue, statuette, yard or lawn ornament, artificial flowers, ornamental rocks or stones, cypress mulch, *swing sets*, mounted hose reels, laundry poles or clotheslines, or other such items." *Id*. (emphasis

added).

On May 23, 2007, a second IFHC tester was sent to the subject property and received the same materials as the first tester. The second tester also requested, and was provided, a copy of the Condominium Declaration and Covenants, Conditions and Restrictions ("CC&R's"). The CC&R's contain a provision that provides "no Unit may be used as a rooming house, *group home*, commercial foster home, fraternity or sorority house, or any similar type of lodging, care or treatment facility." Aff. of Mike Keller, Exhibit C, Condominium Declaration and Covenants, Conditions and Restrictions for the McKinney Condominiums (Dkt. No. 34) (emphasis added).

The CC&R's also provide that, after the first sale of a unit at the subject property, the authority to amend the CC&R's is vested in the Association. *Id*., at ¶ 14.2. The first sale of a unit at the subject property occurred in October 2006. Further, the CC&R's provide for the promulgation and distribution of the Orchards' Guidelines. *Id*., at ¶ 7.4.1.4. The CC&R's are recorded with the Ada County Recorder's Office. (Dkt. No. 57.)

On July 17, 2007, IFHC filed an administrative complaint of discrimination with Housing and Urban Development ("HUD") on the basis of "familial status." IFHC filed a second complaint with HUD, adding a charge of discrimination on the basis of "handicap," on September 7, 2007. IFHC withdrew its complaint, thereby terminating the administrative proceedings related to both charges, on January 24, 2008.

IFHC filed its complaint with this Court on October 15, 2009, alleging four violations of the Fair Housing Act. First, IFHC claims that the sign at the entrance of the condominiums (which includes the phrase "Active-Adult Condominium Communities") and the Guidelines (which prohibit unaccompanied minor children from using the swimming pool and community center) discriminate on the basis of "familial status" in violation of 42 U.S.C. § 3604(b). Second, IFHC claims that the provision in the CC&R's restricting the use of the condominiums as "group homes" discriminates on the basis of "handicap" in violation of 42 U.S.C. § 3604(f). Third, IFHC claims that the sign, Guidelines, and CC&R's constitute discriminatory notices, statements, or advertisements in violation of 42 U.S.C. § 3604(c). Finally, IFHC claims that the Association's failure to rectify the alleged violations constitutes "interference, coercion or intimidation" within the meaning of the Fair Housing Act in violation of 42 U.S.C. § 3617.

Both parties request that the Court enter summary judgment in their favor. IFHC has also filed a Motion to Compel Discovery (Dkt. No. 61), and the Association has filed a Motion for Leave to File Post Hearing Affidavit (Dkt. No. 80). All four motions will be taken up in the discussion below.

## DISCUSSION

### 1. Standard for Summary Judgment

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 248. On the other hand, "[i]f the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact." *Advocacy Center for Persons with Disabilities, Inc. v. Woodlands Estates Assoc. Inc.*, 192 F. Supp.

2d 1344, 1347 (M.D. Fla. 2002).

Finally, the fact that both parties file motions for summary judgment, as they have in this case, does not alter the analysis under Rule 56; the court must consider each motion separately, with care taken to draw all reasonable inferences in favor of the nonmoving party. *Fair Housing Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## 2. Defendant's Motion for Summary Judgment

The Association moves for summary judgment on two grounds. First, the Association argues that IFHC's claims are barred by the applicable statute of limitations. Second, the Association argues that IFHC cannot prove discriminatory conduct attributable to the Association because, as a condominium association, it did not promulgate the CC&R's or the rules contained in the condominium Guidelines, "has no authority to rescind, amend or alter the foregoing documents, and is in no way involved with advertising or marketing the condominium units." Def.'s Mem. in Supp. of Mot. for Sum. Jud., at 2 (Dkt. No. 35.) For the reasons discussed below, the Association is not entitled to summary judgment on either ground.

### A. *Statute of Limitations*

The Fair Housing Act contains a two year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the

termination of an alleged discriminatory housing practice . . . whichever occurs last."). The Act also contains a tolling provision: "The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B).

### (1) *Tolling*

The Association argues that IFHC's complaint is barred by the two-year statute of limitations contained in 42 U.S.C. § 3613(a)(1)(A) and that statutory tolling does not apply. The Association's argument hinges on the proposition that the last alleged violation occurred on May 23, 2007, when an IFHC tester was provided with the condominium Guidelines and CC&R's. To reach this conclusion, the Association necessarily assumes that the statements contained in the Guidelines and CC&R's are discrete violations rather than continuing violations and conceded as much at the hearing. Whether the statements in the Guidelines and CC&R's are continuing violations will be taken up in the next section of this decision.

IFHC's complaint was filed with the Court on October 15, 2009. Assuming the Association is correct that the last violation occurred on May 23, 2007, absent tolling, the statute of limitations expired on May 23, 2009. In other words, without tolling, IFHC's complaint was filed approximately four months and twenty-three days after the expiration of the statute of limitations. However, as stated above, the Fair Housing Act contains a

tolling provision: "The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending . . . ." 42 U.S.C. § 3613(a)(1)(B). IFHC alleged in its complaint that it filed an administrative complaint with HUD on September 7, 2007, and it was later withdrawn on January 24, 2008–a total period of approximately four months and seventeen days. Thus, on the face of IFHC's complaint, the suit was initiated after the expiration of the statute of limitations.

In response to the Association's statute of limitations argument, IFHC submits that it filed an earlier complaint with HUD on July 17, 2007. The filing of the July 17 complaint with HUD adds approximately one month and twenty days to the tolling period, putting IFHC's filing with the Court safely within the statute of limitations.

The Association argues that the Court should not consider the July 17, 2007 administrative complaint filed with HUD because it was not pled in IFHC's complaint. The Association relies on *Nelson v. Davis*, 571 F.3d 924 (9th Cir. 2009), for the proposition that a party may not create an issue of fact precluding summary judgment by filing an affidavit contradicting prior testimony. See Def.'s Reply in Supp. of Sum. Jud., at 9 (Dkt. No. 48.) The *Nelson* case is not on point. In *Nelson v. Davis*, the Ninth Circuit reiterated the well-settled rule that a plaintiff will not be allowed to "creat[e] a factual dispute with himself for the sole purpose of arguing that summary judgment is inappropriate." 571 F.3d at 927-28 ("[I]f a party who has been examined at length on

deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (internal quotations and citations omitted). *Nelson* addresses "sham" affidavits, not an affidavit concerning statutory tolling, the facts of which are easily verifiable in this instance. The Association does not dispute that Plaintiff filed a complaint with HUD on July 17, 2007.

Furthermore, the Association fails to take into consideration the general rule that a plaintiff need not plead facts putting him or herself within the applicable statute of limitations. Under Rule 8 of the Federal Rules of Civil Procedure, the argument that a claim is barred by a statute of limitations is an affirmative defense. See Fed. R. Civ. P. 8; *Schmidt v. U.S.*, 933 F.2d 639 (8th Cir. 1991) (recognizing that statute of limitations is not jurisdictional, and failure to comply with it is merely affirmative defense which defendant has burden of establishing); See also, *Despain v. Despain*, 300 P.2d 500, 502 (Idaho 1956) ("This court has consistently adhered to the rule that the statute of limitations is one of repose and personal to the defendant; that the defendant may, by demurrer, plead that defense if its availability appears on the face of the complaint, or by answer if it does not so appear; that the defense is waived unless so pleaded.") (internal citations omitted).

In this case, the Association raised the statute of limitations as an affirmative defense in its answer. (Dkt. No. 9.) The Association again has raised the defense in its

motion for summary judgment and IFHC has responded by providing an affidavit setting forth the dates on which the administrative complaints were filed. The Court finds that, pursuant to 42 U.S.C. § 3613(a)(1)(B), IFHC's claims were tolled between July 17, 2007 and January 24, 2008, while its administrative complaints were pending with HUD. The Association has not supplied the Court with any authority for the proposition that a plaintiff who fails to plead statutory tolling in a complaint alleging violations of the Fair Housing Act will later be procedurally barred from demonstrating tolling in response to a motion for summary judgment. Viewing the record in the light most favorable to IFHC, the Association is not entitled to summary judgment on this ground. IFHC's complaint was filed with the Court within the two-year statute of limitations.

### (2) *Continuing Violation*

In addition to the above holding, the Court is not convinced that the Association is correct in its characterization of the statements contained in the Guidelines and CC&R's as discrete violations. Under the continuing violations doctrine, the accrual of a claim for discrimination is extended if a continuing system of discrimination violates a claimant's rights "up to a point in time that falls within the applicable limitations period." *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001). The Ninth Circuit has recognized two methods by which a plaintiff may establish a continuing violation: "First, the plaintiff may show a serial violation by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations. . . .

Second, a plaintiff may show a 'systematic policy or practice of discrimination that operated, in part, within the limitations period.'" *Id.* "A systemic violation claim 'requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies. . . . In other words, if both discrimination and injury are ongoing, the limitations clock does not begin to tick until the invidious conduct ends.'" *Id.* (citations omitted).

Relying on *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008), the Association argues that the statements contained in the condominium Guidelines and the CC&R's are discrete violations rather than continuing violations. The Association's reliance on *Brockway* is misplaced. In that case, a tenant asserted that the owner of a housing complex violated the "design and construction" provision of the Fair Housing Act. The tenant filed suit within two years of renting his apartment, but more than two years after the apartment complex was built and certified for occupancy. In response to the former owner's contention that plaintiff's claims were barred by the two-year statute of limitations, the tenant argued that his claim did not accrue until he discovered the violation.

Chief Judge Kozinski, writing for the Ninth Circuit, disagreed. The Court of Appeals first focused on the statutory language of § 3613(a)(1)(A), which provides that the limitations period will begin to run on the date of the "*occurrence* or the *termination* of an alleged discriminatory housing practice . . . whichever occurs last." (emphasis

added).  The court then focused on the specific statutory provision under which the

plaintiff was seeking relief.  In *Brockway*, the plaintiff's claim was brought under 42

U.S.C. § 3604(f)(3)(C), which creates a cause of action for discrimination "in connection

with the *design and construction* of covered multifamily dwellings." (emphasis added).

The court reasoned that, if the statute of limitations begins to run at "the occurrence or

termination of an alleged discriminatory practice," and the complained of practice is the

failure to design and construct according to Fair Housing Act standards, then the latest

date at which the limitations period could be triggered is "at the conclusion of the design-

and-construction phase." 526 F.3d at 461.  In other words, while the Ninth Circuit

recognized that a failure to design and construct a dwelling in accordance with Fair

Housing Act standards very well may have continuing discriminatory effects, the

violation itself ends once the design and construction is completed. *Id.*, at 462.

The holding in *Californians for Disability Rights, Inc. v. California Dept. of

Transportation*, 2009 U.S. Dist. LEXIS 91490 (N.D. Cal. 2009), is instructive regarding

IFHC's claims in this action.  In that case, plaintiffs with mobility and vision impairments

alleged that they had been denied access to various public rights of way due to the

California Department of Transportation's pattern and practice of failing to ensure access

to such facilities in violation of the Americans with Disabilities Act ("ADA").  Like the

Fair Housing Act, the ADA contains a two-year statute of limitations and the defendants

argued that, under *Brockway*, the plaintiffs should be barred by the statute of limitations

because the alleged violations related to construction defects.

The district court disagreed. The court distinguished *Brockway*, stating that unlike the plaintiff's claim in *Brockway*, the claims before the court "are not predicated on the continuing 'effects' of a past violation, but rather, the ongoing violations . . . attributable to Defendants' policies and practices." *Id.*, at *13. In other words, the plaintiffs alleged violations of federal disability laws directly attributable to the defendants' design policies and guidelines, and the district court held that absent a showing that the policies had been terminated, the alleged violations were continuing ones for the purposes of the continuing violations doctrine. *Id.*, at *15.

In this case, IFHC alleges that the statements contained in the condominium Guidelines violate 42 U.S.C. § 3604(b), which creates a cause of action for discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith . . . because of familial status." The provisions in the Guidelines that prohibit swing sets, prohibit minor children from using the pool, and prohibit children from using the community center fall within the statutory prohibition of discrimination in the "provision of services or facilities" on the basis of "familial status" outlined above. The Association has presented no evidence that the Guidelines have been revoked, and IFHC has pointed out that the Guidelines were at least in effect as of September 25, 2007, when counsel for the Association produced them to HUD. Pl.'s Resp. to Mot. for Sum. Jud., at 16 (Dkt. No. 43.) Under *Brockway* and

*Californians for Disability Rights, Inc.*, the allegedly discriminatory statements contained in the Guidelines should be construed as continuing violations for purposes of the statute of limitations.

### B. Whether the Association is the Proper Party

The Association argues that IFHC cannot prove discriminatory conduct attributable to the Association because, as a condominium association, the Defendant does not own the condominiums, "did not promulgate the units' CC& R's, Community Policies and Guidelines or Commonly Asked Questions About Condominium Ownership, has not adopted the foregoing documents, has no authority to rescind, amend or alter the foregoing documents, and is in no way involved with advertising or marketing the condominium units." Def.'s Mem. in Supp. of Mot. for Sum. Jud., at 2-3 (Dkt. No. 35); Aff. of Mike Keller (Dkt. No. 34.)

In response, IFHC directs the Court to the language of the CC&R's, which provides that after the first sale of a unit at the subject property, the authority to amend the CC&R's is vested in the Association. Aff. of Richard Mabbutt, Ex. D, ¶ 14.2 (Dkt. No. 45.) The CC&R's also provide that the Association shall have "[t]he power to adopt, amend and repeal by majority vote of the Board . . . the Community Policies and Guidelines," which are the subject of IFHC's "familial status" claim. *Id.*, at ¶ 7.4.1.4 (underlining in original and internal quotations omitted). IFHC has also provided an affidavit stating that the CC&R's are recorded with the Ada County Recorder's Office

and currently remain in effect with regards to the subject property. (Dkt. No. 46.)

In its Reply, the Association argues that the CC&R's "were never the *actual* policies and guidelines of the [subject property] or the association." Def.'s Reply, at 4 (Dkt. No. 48) (emphasis added). The Association further contends that the CC&R's never went into effect. In support of its argument, the Association points out that the CC&R's provide that they may only be amended by a majority vote of the Board of Trustees and that no such board was ever created or currently exists. *Id*., at 6.

Based on the record before the Court, a genuine issue exists whether the CC&R's are binding on the Association. The Association has submitted the Affidavit of Mike Keller, which states that the Association never adopted the CC&R's and has no authority to "rescind, amend or alter" the CC&R's. Aff. of Mike Keller, ¶¶ 7, 8 (Dkt. No. 34.) The record, however, contains a copy of the CC&R's (Dkt. No. 45, Ex. D), which expressly grant the Association the authority to amend the CC&R's. The record also contains a copy of the Association's Articles of Incorporation (Dkt. No. 46, Ex. A), which provide that Association "shall exercise all of the powers and privileges and perform all of the duties and obligations of the [Association] *as set forth in the Condominium Declaration and Covenants, Conditions, and Restrictions* for the Orchards at Fairview Condominiums."

These documents, along with the affidavit submitted by IFHC stating that the CC&R's are on file with the Ada County Recorder's Office (Dkt. No. 46), refute the

statement by Mike Keller and create a question as to whether the provisions in the CC&R's are applicable to the Association. The Ninth Circuit has held that summary judgment is not appropriate on issues involving mixed questions of law and fact where the underlying facts are disputed. See *Boy Scouts of America v. Graham*, 86 F.3d 861, 864 (9th Cir. 1995) (reversing district court's grant of summary judgement on mixed question of law and fact where "reasonable persons, applying the proper legal standard," could find in favor of the nonmoving party). The Court recognizes that this issue may be primarily legal. The parties, however, have not presented any authorities concerning whether the Court could find the CC&R's binding on the Association as a matter of law even if the Court were to assume for the purposes of summary judgment–which it must–that the Association never formally adopted them. Moreover, the underlying facts are disputed on this issue–IFHC has provided the Court with the Association's bylaws, which reference the CC&R's as a governing document, and the Association has submitted an affidavit stating that the CC&R's were never adopted. Viewing the record in the light most favorable to IFHC, the Association is not entitled to summary judgment on this issue.

### 3. Plaintiff's Motion for Summary Judgment

IFHC seeks summary judgment on all four of its claims against the Association. In support of its motion, IFHC claims that the CC&R's, Guidelines, and the sign at the entrance of the property are facially discriminatory, that there are no disputed facts as to

whether the Association is responsible for those items, and that IFHC is entitled to

judgment as a matter of law under 42 U.S.C. § 3604(b), (c) and (f).  IFHC also argues that

the Association's failure to correct the alleged violations constitutes interference,

coercion, or intimidation within the meaning of 42 U.S.C. § 3617 and that IFHC is

entitled to judgment as a matter of law on this claim.  For the reasons discussed below,

IFHC is not entitled to summary judgment on any of its claims.

**A.** *Discrimination on the Basis of "Familial Status"*

Title 42 U.S.C. § 3604(b) provides, in relevant part, that it is illegal to discriminate

in the "terms, conditions, and privileges of a rental dwelling because of familial status."

The fair housing regulations promulgated by HUD make clear that limiting the use of

privileges and facilities associated with a dwelling because of familial status is a violation

of  § 3604(b). 24 C.F.R. § 100.65(b)(4).

HUD has adopted the three-part test set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973), for evaluating claims of discrimination under the Fair

Housing Act. *U.S. v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992).[4]  Under this test:

> First, the plaintiff has the burden of proving a prima facie case
> of discrimination by a preponderance of the evidence.  Second,
> if the plaintiff sufficiently establishes a prima facie case, the
> burden shifts to the defendant to articulate some legitimate
> [non]discriminatory reason for its action.  Third, if the

---

[4]  The parties have not framed their arguments in terms of the test outlined in
*McDonnell Douglas Corp.*, but the Court will nonetheless set forth the proper legal
standard under which the claims in this case should be evaluated.

> defendant satisfies this burden, the plaintiff has the opportunity
> to prove by a preponderance that the legitimate reasons
> asserted by the defendant are in fact mere pretext.

*Pollitt v. Bramel*, 669 F.Supp. 172, 175 (S.D. Ohio 1987) (citations omitted).

The Eighth Circuit has stated that "[t]he elements of prima facie case of discrimination will vary from case to case, depending on the allegations and the circumstances." *Badgett*, 976 F.2d at 1178. However, in a similar case to the one at bar, the Central District of California held that a plaintiff can make out a prima facie case of discrimination "by showing facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households." *Fair Housing Congress v. Weber*, 993 F.Supp. 1286, 1292 (C.D. Cal. 1997). Furthermore, other courts have found that "outright prohibitions on children's use of facilities like a billiards room and shuffleboard facility were not justified, and that rules requiring adult supervision of all children (up to age 18) at all times were not justified." *Id.*, at 1293 (citing *U.S. v. M. Westland Co.*, (HUD ALJ 1994)). By contrast, rules requiring adult supervision of very young children during specified activities such as swimming and ridding bikes have been held to be justified. *Id.*

In this case, IFHC has made out a prima facie case for discrimination on the basis of "familial status." The condominium Guidelines expressly prohibit unaccompanied minor children using the pool, and children from using the community center. These rules are the type that have been found overly restrictive. See *Pack v. Fort Washington II*,

689 F. Supp. 2d 1237, 1246 (E.D. Cal. 2009) (holding apartment rules prohibiting

children under 18 from using community clubhouse without an adult and requiring

children under 14 to be supervised by parent or legal guardian while using swimming

pool discriminatory on the basis of "familial status"); *Llanos v. Estate of Coehlo*, 24 F.

Supp. 2d 1052, 1061-62 (E.D. Cal. 1998) (holding rule restricting children under 18 from

using adult pools was "overly broad, 'paternalistic' and unduly restrictive"); *Blomgren v.*

*Ogle*, 850 F. Supp. 1427 (E.D. Wash. 1993); *Fair Housing Congress*, 993 F. Supp. at

1292 ("A prohibition on unsupervised swimming which would prevent 'even a 17-year

old certified lifeguard from swimming unaccompanied is overly restrictive.'") (quoting

*U.S. v. M. Westland Co.*, (HUD ALJ 1994)).

Defendant argues that "non-discriminatory reasons justify the content of the

Documents." Def.'s Resp. to Pl.'s Mot. for Sum. Jud., at 9 (Dkt. No. 65.)  This assertion,

however, is not supported by anything in the record, and is not sufficient to defeat a

motion for summary judgment.[5]

Notwithstanding the Association's failure to provide non-discriminatory

justifications for the restrictions contained in the Guidelines, IFHC's motion for summary

judgment cannot be granted on this issue.  The Association has raised a genuine issue of

---

[5]  The Affidavit of Mike Keller (Dkt. No. 78), filed by the Association, states that non-discriminatory purposes justify the prohibition on group homes contained in the CC&R's.  It does not, however, give any justification for the pool or community center restrictions.

material fact; the Association claims it has no control over the content of the Guidelines and has submitted an affidavit of Mike Keller to that effect. Furthermore, as stated above, IFHC has not provided the Court with any legal authority concerning whether this Court could find the Association responsible for the content of the Guidelines–assuming, for the purposes of summary judgment, that the Association did not formally adopt the CC&R's. Thus, viewing the record in the light most favorable to the Association, and given the failure of IFHC to provide legal authority on the issue set forth above, as well as the existence of a disputed fact relating to whether the Association did (or did not) adopt the CC&R's, IFHC's motion for summary judgment will be denied on this issue.

### B. Discrimination on the Basis of "Handicap"

The Fair Housing Act prohibits discrimination in the terms, conditions or privileges of the sale or rental of, or to otherwise make unavailable, a dwelling on the basis of "handicap." 42 U.S.C. § 3604(f). IFHC claims that the prohibition on group homes contained in the CC&R's violates § 3604(f). The CC&R's contain a provision that provides "no Unit may be used as a rooming house, *group home*, commercial foster home, fraternity or sorority house, or any similar type of lodging, care or treatment facility." Aff. of Mike Keller, Exhibit C (Dkt. No. 34) (emphasis added).

IFHC asserts that "[n]umerous courts have held that restrictive covenants on group homes violate the FHA." Pl.'s Resp. to Def.'s Mot. for Sum. Jud., at 7 (Dkt. No. 43.) The Association takes issue with this statement of the law. The Association argues that the

case law interpreting the Fair Housing Act and relied upon by IFHC actually stands for the proposition that the Act "prohibits *enforcement* of restrictive covenants that discriminate or have the effect of discriminating against group homes for persons with disabilities." HDISLL § D:5, n. 6 (emphasis added). The Association is correct. HUD's regulations on discriminatory conduct under the Fair Housing Act prohibit "*enforcing covenants* . . . which preclude the sale or rental of a dwelling to any person because of . . . handicap." 24 C.F.R. 100.80(b)(3) (emphasis added).

Furthermore, the allegedly discriminatory provision in the CC&R's is facially neutral; that is, the prohibition on group homes is not expressly related to any disability and is in fact listed among several other types of group living arrangements, including commercial foster homes, fraternity houses, sorority houses, or any similar type of lodging. Where the complained of restrictive covenant is facially neutral, the plaintiff bears the burden of showing that the covenant's enforcement had a discriminatory effect. *Martin v. Constance*, 843 F. Supp. 1321, 1325-26 (E.D. Mo. 1994). IFHC has alleged no facts indicating that the restrictive covenant at issue has ever been enforced.

Viewing all the evidence in the light most favorable to the Association, IFHC is not entitled to judgment as a matter of law on its "handicap" claim.

### C. Discriminatory Notice, Statement, or Advertisement

Under 42 U.S.C. § 3604(c), it is unlawful to "make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the

sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status." HUD regulations make clear that these prohibitions apply to "[w]ritten notices and statements includ[ing] any application, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling." 24 C.F.R. § 100.75(b). The standard for determining whether a given statement violates § 3604(c) is whether the statement suggests a preference to the ordinary reader or listener. *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1989).

IFHC contends that the statements in the Guidelines prohibiting children from the pool and community center would suggest to an ordinary reader a preference for families without children. IFHC also contends that the sign at the entrance of the property, which contains the phrase "Active Adult Condominium Community," would suggest to an ordinary reader a preference for families without children. IFHC conceded at oral argument that both of these claims rely on the applicability of the CC&R's to the Association. It is undisputed that the CC&R's grant the Association authority over the Guidelines and the common areas of the subject property. The Association disputes, however, that it ever adopted the CC&R's. And, as previously discussed, neither party has provided the Court with legal authority addressing whether the Association would be relieved of responsibility over the provisions of the CC&R's as a matter of law if the Defendant did in fact fail to adopt the CC&R's as the policies of the Association.

Viewing the record in the light most favorable to the Association on this issue, and in light of the above discussion, IFHC is not entitled to summary judgment on its claim against the Association for discriminatory publications in violation of 42 U.S.C. § 3604(c).

### D. Interference, Coercion or Intimidation

The Fair Housing Act makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" his or her rights under the FHA. 42 U.S.C. § 3617. The elements of a § 3617 claim are "(1) plaintiff is a member of a protected class under the Fair housing Act; (2) plaintiff exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination at least partially motivated defendants' conduct; and (4) defendants' conduct constituted coercion, intimidation, threat, or interference on account of having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606." *Zhu v. Countrywide Realty Co.*, 160 F.Supp.2d 1210, 1233 (D. Kan. 2001).

IFHC argues that Defendant's failure to remove the allegedly discriminatory sign at the entrance of the subject property and to amend the allegedly discriminatory language contained in the Guidelines and CC&R's constitutes interference, coercion or intimidation within the meaning of 42 U.S.C. § 3617. In other words, IFHC contends

that, because it has pled violations of § 3604, it also is entitled to make a claim under § 3617. IFHC cites an earlier decision from this district, in which the Court stated "[i]f grounds existed to find that the exercise of Plaintiff's rights under 42 U.S.C. § 3604 were violated, this may be grounds to establish a claim of interference, depending on the factual circumstances." *Garcia v. Brockway*, CV03-193-S-MHW (D. Idaho Oct. 14, 2004). This language stands for the proposition that discriminatory practices in the rental or sale of a dwelling could, under some circumstances, conceivably also constitute coercion, intimidation, or interference within the meaning of 42 U.S.C. § 3617. This Court has not held that a violation of § 3604(b) establishes a per se violation of § 3617, which is what IFHC is asking the Court to find. Upon full review of the record, IFHC simply has not pled sufficient facts, or demonstrated undisputed facts exist, to be entitled to summary judgment on this claim.

### 4. Plaintiff's Motion to Compel Discovery

In addition to its motion for summary judgment, IFHC also seeks an order requiring the Association to respond to two discovery requests previously objected to by the Association. Mot. to Compel Disc. (Dkt No. 61.) IFHC also seeks reasonable attorney's fees and costs incurred in bringing the motion. Upon review of the briefing, and in light of the representations made by counsel at the hearing, IFHC's motion will be denied.

IFHC's Interrogatory No. 13 asks the Association to "[s]tate when the first

condominium located at the Subject Property was sold to a bona fide purchaser." Pl.'s Mot. to Compel, Exh. B (Dkt. No. 61-1.)  In response, the Association provided the following answer: "Orchards objects to the interrogatory on the basis that it is not calculated to lead to the discovery of admissible evidence.  Without waiving the foregoing objection, Defendant Orchards believes that the first sale occurred in October of 2006." *Id.*  As IFHC points out, the information requested in Interrogatory No. 13 is relevant because the CC&R's provide that after the first sale of a unit at the subject property, the Association has the authority (under the terms of the CC&R's) to amend the CC&R's.

At the hearing on the motions, the Association conceded the relevance of the date on which the first condominium unit was sold.  Notwithstanding the Association's admission of relevance, IFHC contends that the Association's failure to withdraw the objection in its written response to the interrogatory taints the answer for the purposes of trial.  The Court disagrees.  IFHC has the information sought in Interrogatory No. 13 and, in fact, uses the date in its motion for summary judgment.  See Pl.'s Mot. For Sum. Jud., at 8 (Dkt. No. 55) ("The first sale of a unit at the Subject Property occurred in October 2006.").  Any objection that the Association may or may not have concerning the question, and its answer, may be dealt with at trial if necessary and appropriate.  IFHC's motion to compel will be denied as to Interrogatory No. 13.

The second interrogatory at issue, Plaintiff's Interrogatory No. 10, requests that the

Association "[s]tate your present net worth, including an itemized list of each component thereof." Pl.'s Mot. to Compel, Exh. A (Dkt. No. 61-1.)  The Association objected "on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence [and stated] [w]ithout waiving the foregoing objection, Defendant states that it is a condominium owners association and non-profit corporation; it therefore has no net worth aside from the dues it collects from its members." *Id*.

IFHC claims that it is entitled to this information because it is related to the issue of punitive damages.  See *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 550 (N.D. Ind. 1991) (holding that financial information regarding a defendant is discoverable where a plaintiff has properly asserted a claim for punitive damages).  The Court recognizes that punitive damages are expressly authorized under the Fair Housing Act. See 42 U.S.C. § 3613(c)(1) ("if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages.") The Court, however, also recognizes that the Association represented at the hearing that it will provide the financial information sought to IFHC.  Due to the Association's representation at the hearing that it will supply the sought information, along with the Association's claim that IFHC did not comply with the meet and confer requirement contained in District of Idaho Local Rule of Civil Practice 37.1, the Court will deny Plaintiff's motion as to this discovery request.  However, if the information is not provided as requested, IFHC may renew its motion to compel and fees.

**5.  Defendant's Motion for Leave to File Post Hearing Affidavit**

Following the hearing on the parties' motions, the Association filed a Motion for Leave to File Post Hearing Supplemental Affidavit. (Dkt. No. 80.)  The supplemental affidavit concerns the location of the sign and  whether it is located on the "common areas" of the subject property.  The CC&R's provide that the Association is responsible for the maintenance of the condominium common areas.  It is through this provision that IFHC attributes responsibility for the content of the sign to the Association.  The affidavit purports to establish that the sign is not on the common areas.  And IFHC has not presented any evidence relating to whether the sign is on the common areas of the property.  IFHC requests that the Court not consider the supplemental affidavit because the factual allegation it asserts was not previously raised and IFHC has not had the opportunity to respond to the factual assertions contained in the affidavit.  The Court notes, however, that while the affidavit purports to establish that the sign is not on the common areas of the property, it does nothing in the way of establishing who is in fact responsible for the maintenance of the sign.  Presumably someone takes care of the sign–the record includes a picture of the sign, in which the allegedly discriminatory statement is obscured by tape.

Given the Court's ruling that IFHC is not entitled to summary judgement on its claim under § 3604(c) due to the factual dispute concerning the Association's adoption of the CC&R's, the Court finds that IFHC will not be prejudiced by the Court's

consideration of the affidavit.  In other words, even if the affidavit was not allowed, IFHC's motion for summary judgment on this issue would be denied.  The Association's Motion for Leave to File Post Hearing Supplemental Affidavit (Dkt. No. 80) will therefore be granted and the issue of whether the sign is located on the common areas of the subject property will be reserved for the trier of fact.

## ORDER

Based on the Foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that**:

1.  Defendant's Motion For Leave to File Post Hearing Supplemental Affidavit (Dkt. No. 80) is **GRANTED**;

2.  Defendant's Motion for Summary Judgment (Dkt. No. 32) is **DENIED**;

3.  Plaintiff's Motion for Summary Judgment (Dkt. No. 54) is **DENIED**; and

4.  Plaintiff's Motion to Compel Discovery (Dkt. No. 61) is **DENIED**.

DATED: January 18, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge